TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
JULIA HU (Cal. Bar No. 338226)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1259/3802
    Facsimile: (213) 894-0141/6269
    E-mail: alexander.schwab@usdoj.gov
          julia.hu@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>ERNESTO DIAZ,<br><br>      Defendant. | No. CR 12-829(B)-SVW<br><br>TRIAL MEMORANDUM<br><br>Trial Date:  September 9, 2021<br>Trial Time:  9:00 a.m.<br>Location: Courtroom of the<br>Hon. Stephen V. Wilson |

Plaintiff, United States of America, by and through its counsel of record, the Acting United States Attorney and Assistant United States Attorneys Alexander B. Schwab and Julia Hu, hereby submits its trial memorandum. The government requests leave to file additional

//
//
//
//
//
//

memoranda as may become appropriate during the course of the trial.

Dated: September 7, 2021          Respectfully submitted,

                                  TRACY L. WILKISON
                                  Acting United States Attorney

                                  SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  ALEXANDER B. SCHWAB
                                  JULIA HU
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

**PAGE**

**Contents**

I.    CASE STATUS.......................................................1

II.   PRETRIAL MOTIONS...............................................2

III.  INDICTMENT AND ELEMENTS.....................................2

    A.   Conspiracy to Commit Mail Fraud.............................2

    B.   Mail Fraud.................................................3

    C.   Failure to Appear While Released on Bond..................5

IV.   STATEMENT OF FACTS............................................5

V.    ANTICIPATED DEFENSE CASE......................................7

VI.   EVIDENTIARY ISSUES............................................7

    A.   Summary Chart and Witness..................................7

    B.   Authentication and Foundation.............................10

    C.   Business Records..........................................11

        1.   Foundational Requirements.............................11

        2.   "Qualified Witness"...................................12

        3.   Circumstances of Preparation..........................13

        4.   Authentication by Declaration.........................13

        5.   Duplicates............................................14

    D.   Public Records............................................14

    E.   Flight as Circumstantial Evidence of Guilt...............14

    F.   Recordings and the Rule of Completeness...................16

    G.   Past Recorded Recollection Under Rule 803(5).............18

    H.   Cross-Examination of Defendant............................18

    I.   Cross-Examination of General Witnesses...................20

    J.   Grand Jury Testimony......................................21

    K.   Character Evidence........................................21

i

# **TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

      L.    Lay Witness Testimony...................................22

VII. RECIPROCAL DISCOVERY.........................................24

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

Barsky v. United States,
  339 F.2d 180 (9th Cir. 1964) ................................. 8

Crawford v. Washington,
  541 U.S. 36 (2004) ......................................... 13

Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.,
  466 F.2d 722 (7th Cir. 1972) ................................ 9

La Porta v. United States,
  300 F.2d 878 (9th Cir. 1962) ............................... 11

Michelson v. United States,
  335 U.S. 469 (1948) .................................... 21, 22

Tamarin v. Adam Caterers, Inc.,
  13 F.3d 51 (2d Cir. 1993) ................................... 9

United States v. Aceves-Rosales,
  832 F.2d 1155 (9th Cir. 1987) .............................. 24

United States v. Arias-Villanueva,
  998 F.2d 1491 (9th Cir. 1993) .............................. 12

United States v. Ataba,
  805 F. App'x 491 (9th Cir. 2020) ........................... 23

United States v. Basey,
  613 F.2d 198 (9th Cir. 1979) ............................... 13

United States v. Black,
  767 F.2d 1334 (9th Cir. 1985) ......................... 11, 18-19

United States v. Bland,
  961 F.2d 123 (9th Cir. 1992) ............................... 11

United States v. Bourjaily,
  483 U.S. 171 (1987) ........................................ 11

**FEDERAL CASES:**                                                    **PAGE(S)**

United States v. Brown,

  800 F. App'x 455 (9th Cir. 2020) ............................ 18

United States v. Caswell,

  825 F.2d 1228 (8th Cir. 1989) ................................. 9

United States v. Catabran,

  836 F.2d 453 (9th Cir. 1988) ................................ 13

United States v. Cervantes-Flores,

  421 F.3d 825 (9th Cir. 2005) ................................ 13

United States v. Childs,

  5 F.3d 1328 (9th Cir. 1993) ................................. 12

United States v. Chu Kong Yin,

  935 F.2d 990 (9th Cir. 1991) ................................ 11

United States v. Collicott,

  92 F.3d 973 (9th Cir. 1996) ................................. 17

United States v. Cuozzo,

  962 F.2d 945 (9th Cir. 1992) ................................ 18

United States v. Dixon,

  201 F.3d 1223 (9th Cir. 2000) ............................... 15

United States v. Franco,

  136 F.3d 622 (9th Cir. 1998) ................................ 16

United States v. Franco,

  874 F.2d 1136 (7th Cir. 1989) ............................... 12

United States v. Gardner,

  611 F.2d 770 (9th Cir. 1980) ......................... 8, 9, 10

**FEDERAL CASES:** PAGE(S)

United States v. Gay,

  967 F.2d 322 (9th Cir. 1992) ................................. 19

United States v. Hagege,

  437 F.3d 943 (9th Cir. 2006) ................................. 13

United States v. Harris,

  914 F.2d 927 (7th Cir. 1990) ................................. 19

United States v. Hathaway,

  798 F.2d 902 (6th Cir. 1986) ................................. 12

United States v. Hernandez-Miranda,

  601 F.2d 1104 (9th Cir. 1979) ................................ 15

United States v. Huber,

  772 F.2d 585 (9th Cir. 1985) ................................. 13

United States v. Jim,

  786 F.3d 802 (10th Cir. 2015) ................................ 20

United States v. Johnson,

  594 F.2d 1253 (9th Cir. 1979) ................................ 8

United States v. McCollom,

  664 F.2d 56 (5th Cir. 1981) ................................. 22

United States v. Meyers,

  847 F.2d 1408 (9th Cir. 1988) ............................... 8

United States v. Mezzanatto,

  513 U.S. 196 (1995) ......................................... 20

United States v. Montgomery,

  384 F.3d 1050 (9th Cir. 2004) ............................... 10

FEDERAL CASES:                                                          PAGE(S)

United States v. Nash,

   115 F.3d 1431 (9th Cir. 1997) ................................. 24

United States v. Patterson,

   678 F.2d 774 (9th Cir. 1982) .................................. 18

United States v. Poschwatta,

   829 F.2d 1477 (9th Cir. 1987) .................................. 8

United States v. Quiroga,

   554 F.3d 1150-57 (8th Cir. 2009) ............................. 19

United States v. Ray,

   930 F.2d 1368 (9th Cir. 1990) ............................ 12, 13

United States v. Scholl,

   166 F.3d 964 (9th Cir. 1999) .................................. 24

United States v. Silverman,

   449 F.2d 1341 (2d Cir. 1971) ................................... 8

United States v. Silverman,

   861 F.2d 571 (9th Cir. 1988) .................................. 14

United States v. Skillman,

   922 F.2d 1370 (9th Cir. 1990) ................................. 14

United States v. Soulard,

   730 F.2d 1292 (9th Cir. 1984) .................................. 9

United States v. Smith,

   893 F.2d 1573 (9th Cir. 1990) ................................. 11

United States v. Spires,

   628 F.3d 1049 (8th Cir. 2011) .................................. 8

**FEDERAL CASES:**                                              **PAGE(S)**

United States v. Turner,

   528 F.2d 143 (9th Cir. 1975) ................................. 16

United States v. Vallejos,

   742 F.3d 902 (9th Cir. 2014) ................................. 17

**Federal Statutes**

18 U.S.C. § 1341 ............................................... 2

18 U.S.C. § 1349 ............................................... 2

18 U.S.C. §§ 3146(a)(1), (b)(1)(A)(i) .......................... 2

**Federal Rules**

Fed. R. Crim. P. 6(b)(1)(A), (b)(1)(C) ........................ 24

Fed. R. Crim. P. 16 .......................................... 24

Fed. R. Evid. 104(a) ......................................... 11

Fed. R. Evid. 106 ............................................ 17

Fed. R. Evid. 403 ..................................... 1, 10, 16

Fed. R. Evid. 404(b) ......................................... 19

Fed. R. Evid. 405(a) ..................................... 21, 22

Fed. R. Evid. 410 ........................................ 19, 20

Fed. R. Evid. 608(a) ......................................... 20

Fed. R. Evid. 608(b) ......................................... 21

Fed. R. Evid. 611(a) ...................................... 8, 10

Fed. R. Evid. 701 ............................................ 22

Fed. R. Evid. 702 ........................................ 22, 23

Fed. R. Evid. 703 ........................................ 22, 23

Fed. R. Evid. 801(d)(2) ...................................... 16

Fed. R. Evid. 802 ............................................. 9

# TABLE OF AUTHORITIES (CONTINUED)

**FEDERAL CASES:**                                                      **PAGE(S)**

Fed. R. Evid. 803(6) ........................................... 11

Fed. R. Evid. 803(8) ........................................... 14

Fed. R. Evid. 609 .............................................. 20

Fed. R. Evid. 801(d)(1)(A) ..................................... 21

Fed. R. Evid. 801(d)(2)(D) ..................................... 19

Fed. R. Evid. 803(5) ........................................... 18

Fed. R. Evid. 803(6) ....................................... 12, 13

Fed. R. Evid. 901(a) ........................................... 10

Fed. R. Evid. 902(11) .......................................... 13

Fed. R. Evid. 1003 ......................................... 11, 14

Fed. R. Evid. 1005 ............................................. 14

Fed. R. Evid. 1006 .................................... 7, 8, 9, 10

# I.  CASE STATUS

1.   Trial is scheduled for September 9, 2021 at 9:00 a.m.

2.   Defendant Ernesto Diaz ("defendant") is in custody and is one of three charged defendants in the case.  Codefendants Marcella Gonzalez and Jude Lopez were convicted and sentenced in 2015.  (Dkt. 162 & 174.)

3.   Trial by jury has not been waived.

4.   The government will call approximately twelve witnesses in its case-in-chief: clients of the company at which defendant worked, Crown Point; employees of Crown Point; representatives from some of the lenders to whom Crown Point mailed documents in furtherance of its fraudulent scheme; law enforcement agents; and a summary witness who will testify about the company's financials.

5.   The government has offered defendant stipulations as to certain facts and exhibits.  Although defense counsel has indicated that defendant is likely to agree to certain stipulations, the government has yet to receive any signed stipulations.

6.   The government will seek to admit a summary exhibit spreadsheet that summarizes the voluminous financial records in this case.  This document was first provided to the defense on July 13, 2021, and a near final draft was provided that same day.  Defendant has indicated no objection to the chart itself or the underlying evidence, but has indicated an objection to its relevance under Federal Rule of Evidence 403.

7.   The government will use a number of demonstrative exhibits at trial that will not be offered into evidence.  These include photographs and financial records.

8.   To date, defendant has provided no reciprocal discovery.

## II.   PRETRIAL MOTIONS

The government filed an unopposed motion for the Court to take judicial notice of the 2012 version of the CR-1 bond form, which was granted on August 6, 2021.  (Dkts. 246 & 248.)  On August 26, 2021, the government filed a motion in limine to exclude evidence and arguments concerning victim negligence, which is pending before the Court.  (Dkt. 257.)

## III.  INDICTMENT AND ELEMENTS

The second superseding indictment charges defendant with conspiracy to commit mail fraud affecting a financial institution, in violation of 18 U.S.C. § 1349; four counts of mail fraud affecting a financial institution, in violation of 18 U.S.C. § 1341; and failure to appear while released by a judicial officer pending further judicial proceedings, in violation of 18 U.S.C. §§ 3146(a)(1), (b)(1)(A)(i) and 3147.

### A.   Conspiracy to Commit Mail Fraud

For defendant to be convicted of conspiracy to commit mail fraud, the government must prove the following elements beyond a reasonable doubt: (1) On an unknown date, but no later than in or about February 2010, and continuing to at least in or about June 2012, there was an agreement between two or more persons to commit mail fraud, as charged in the indictment; and (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

A conspiracy is a kind of criminal partnership -- an agreement of two or more persons to commit one or more crimes.  The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. The jury must find that there was a plan to commit the crime of mail fraud as an object of the conspiracy.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

**B.    Mail Fraud**

For defendant to be convicted of mail fraud, the government must prove the following elements beyond a reasonable doubt: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud;

that is, the intent to deceive or cheat; and (4) defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

The defendant may be found guilty of mail fraud even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To "aid and abet" means intentionally to help someone else commit a crime. To prove the defendant guilty of mail fraud by aiding and abetting, the government must prove each of the following beyond a reasonable doubt: (1) the crime of mail fraud was committed by someone; (2) defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the crime of mail fraud; (3) defendant acted with the intent to facilitate the crime; and (4) defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit mail fraud. A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime. The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the material mailed was itself false or deceptive so long as the mail was used as a part of the

4

scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained. In determining whether a scheme to defraud exists, a jury may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

### C. Failure to Appear While Released on Bond

For defendant to be convicted of failure to appear while released on bond, the government must prove the following elements beyond a reasonable doubt: (1) the defendant was released pursuant to a bond order; (2) the defendant was required to appear in court or before a judicial officer on October 15, 2012; (3) the defendant knew of this required appearance; however, if the defendant engaged in a course of conduct designed to avoid notice of his court date, the government is not required to prove the defendant's actual knowledge of that date; and (4) the defendant intentionally failed to appear as required.

### IV. STATEMENT OF FACTS

From at least March 2010 to at least March 2011, defendant and co-defendant Marcella Gonzalez ran a fraudulent mortgage-elimination program that operated under the names "Crown Point Education, Inc." and "Crown Point, Inc." ("Crown Point"). In essence, defendant and co-defendant Gonzalez would advertise to distressed homeowners that the Crown Point program could eliminate whatever balance existed on their mortgages. As several homeowners will testify, they had fallen behind on their mortgage payments during the housing financial crisis because of workplace injuries, medical bills, pregnancy, and other personal circumstances. In exchange, the homeowners would pay Crown Point thousands of dollars for Crown Point's services (the precise

figure varied by homeowner), with a partial payment demanded at the inception of the program, followed by monthly fees.

Defendant and co-defendant Gonzalez offered seminars describing the Crown Point program to prospective customers but refused to specify, under the auspices of protecting proprietary information, the means by which they purportedly eliminated existing mortgages. At the seminars, defendant would both guarantee that the Crown Point program would be successful and claim that it had, in fact, been successful in clearing the mortgages of past customers. Defendant and co-defendant Gonzalez also met personally with customers and prospective customers to make similar promises of success, assuage the concerns of customers who had seen no signs of success, and demand additional payments. Defendant and co-defendant Gonzalez often counseled customers to cease mortgage payments to their lenders altogether and to pay Crown Point instead.

In reality, Crown Point had had no previous success in eliminating customer mortgage debt at the time that defendant made these promises, nor were any of its further efforts fruitful. The program was largely predicated on the mailing of certain notarized documents of no legal significance to the mortgage lenders. In order to disguise Crown Point's failures, co-defendant Jude Lopez would file bankruptcy petitions on the clients' behalf, oftentimes without their knowledge. As a related delay tactic, Crown Point would "cloud" title to the clients' homes by adding owners via quitclaim deeds, in effect stalling eventual foreclosure and eviction proceedings. No client's mortgage was eliminated by Crown Point's program, and many clients lost their homes. In fact, the evidence will show that defendant's own brother had lost his house after

putting the house through the Crown Point program and that defendant, knowing this fact, failed to disclose it to potential clients and continued to market the program as having succeeded in the past.

Throughout this period, defendant performed a managerial role in Crown Point, including directing the activities of employees and recruiting and interfacing with clients.

**V.    ANTICIPATED DEFENSE CASE**

Defendant has not articulated a precise defense but indicated at the status conferences on July 15, 2021 and August 12, 2021 that he may assert that he lacked any intent to defraud because he himself believed in the efficacy of the Crown Point program and that he played a minimal role in the company.  Thus far, defendant has not shown the government any exhibits nor mentioned any proposed witnesses.

**VI.   EVIDENTIARY ISSUES**

**A.    Summary Chart and Witness**

This case involves a large number of documents, including thousands of pages of bank records related to accounts in Crown Point's name.  To assist in the jury's understanding of the case, the government intends to present a summary of these voluminous, admissible documents.  Specifically, the government plans to introduce a summary chart that encompasses all deposits going into Crown Point's bank accounts from March 1, 2010 to March 25, 2011, which corresponds to a conversative estimate of the time that defendant worked at Crown Point.

Fed. R. Evid. 1006 provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or

calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place.  The court may order that they be produced in court.

A chart or summary may be admitted as evidence under Rule 1006 where its proponent establishes that the underlying documents are voluminous, admissible, and available for inspection.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979).  While the underlying documents must be admissible, they need not be admitted.  See Meyers, 847 F.2d at 1412; Johnson, 594 F.2d at 1257 n.6.  Summary charts need not contain the defendant's version of the evidence and may be given to the jury while a government witness testifies about them.  See Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964).  "Also, summaries may include assumptions and conclusions so long as they are based upon evidence in the record."  United States v. Spires, 628 F.3d 1049, 1053 (8th Cir. 2011) (cleaned up).

Summary charts and exhibits, such as the one that the government wishes to introduce into evidence, have long been recognized as an appropriate means of presenting complicated or document-intensive information to a jury.  See United States v. Silverman, 449 F.2d 1341, 1346 (2d Cir. 1971).  Fed. R. Evid. 611(a) permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."  See United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

Hence, under Federal Rules of Evidence 1006 and 611(a), courts routinely admit into evidence summary charts that organize voluminous evidence and aid the jury's understanding so long as the underlying evidence is admissible and made available to the adverse party, and a witness with knowledge of their preparation is available for cross-examination. See Gardner, 611 F.2d at 776; Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993); United States v. Caswell, 825 F.2d 1228, 1235-36 (8th Cir. 1989).

The summary charts and exhibits that the government intends to present satisfy all of the foregoing requirements. The underlying evidence, such as bank statements and copies of money orders and checks are admissible as business records pursuant to Fed. R. Evid. 802. All of the underlying evidence has already been provided or made available to the defense. Travis Bouchard, an FBI Forensic Accountant who participated in preparing the summary chart will be available for cross-examination.[1] Moreover, the summary exhibits will serve to organize and clarify the government's presentation and

---

[1] Previous versions of the charts were created by an agent who is no longer employed by the FBI. All underlying bank records and the previous versions of the charts were provided to FBI Forensic Accountant Bouchard. Forensic Accountant Bouchard reviewed all of the underlying bank records and verified each individual deposit into all three of Crown Point's bank accounts and updated the charts accordingly. See United States v. Soulard, 730 F.2d 1292, 1299 (9th Cir. 1984) (ruling that summary chart was admissible through an IRS agent who testified as a summarizing witness to present the Government's bank deposits analysis even though the agent "was not involved in the investigation or original preparation of the Government's case" where the "witness testified that he had performed a 'substantial review' of the other agent's analysis to assure that it 'was correct, based on the evidence'"); Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co., 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary . . . that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand.").

assist the jury's understanding of the case.  The use and admission
of summary exhibits at trial is well within the Court's discretion.
Fed. R. Evid. 611(a); <u>Gardner</u>, 611 F.2d at 776.

On July 14, 2021, the government provided defense counsel with a
draft copy of the summary charts that it intends to introduce at
trial.  Defense counsel did not raise any objections as to the
chart's admissibility under Rule 1006 but indicated that he objected
to the chart's relevance under Rule 403.  The summary charts are
relevant because they "outline[] the government's theory of the scope
of the conspiracy."  <u>United States v. Montgomery</u>, 384 F.3d 1050, 1061
(9th Cir. 2004) (holding that the district court's admission of a
government exhibit summarizing unreported rentals for years 1993 to
1995 "relevant and not unfairly prejudicial" in a mail fraud
prosecution).  The total deposits going into Crown Point's bank
accounts during defendant's employment there demonstrates the volume
of customers affected by the conspiracy and bears on defendant's
intent to defraud.  Nothing in the charts will suggest that defendant
alone received the entirety of the deposits going into Crown Point's
accounts; in fact, the charts will not mention defendant's name at
all.  Thus, the charts should be admitted over any Rule 403
objection.

### B.    Authentication and Foundation

Federal Rule of Evidence 901(a) provides that "[t]he requirement
of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a
finding that the matter in question is what its proponent claims."
Under Rule 901(a), evidence should be admitted, despite any
challenge, once the government makes a prima facie showing of

10

authenticity or identification so "that a reasonable juror could find in favor of authenticity or identification . . . [because] the probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (citations and internal quotation marks omitted); see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

A duplicate is admissible to the same extent as the original, unless there is a genuine question as to the authenticity of the original or it would be unfair under the circumstances to admit the duplicate in lieu of the original. See Fed. R. Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

## C. Business Records

### 1. Foundational Requirements

For business records to be admissible, the following foundational facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity. Fed. R. Evid. 803(6); United States v. Bland, 961 F.2d 123, 126-28 (9th Cir. 1992). In determining whether these foundational facts are established, the Court may consider hearsay and other evidence not admissible at trial. See Fed. R. Evid. 104(a), 1101(d)(1); United States v. Bourjaily, 483 U.S. 171, 178-79 (1987).

Challenges to the accuracy or completeness of business records ordinarily go to the weight of the evidence and not its admissibility. See, e.g., La Porta v. United States, 300 F.2d 878, 880 (9th Cir. 1962).

2.   "Qualified Witness"

The phrase "other qualified witness" is broadly interpreted to require only that the witness understand the recordkeeping system. United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993); United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir. 1993); United States v. Ray, 930 F.2d 1368, 1370-71 (9th Cir. 1990) (concluding that welfare fraud investigator could testify about contents of defendant's welfare file where investigator was familiar with filing and reporting requirements and forms used, even though she did not record information and was not custodian); United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) ("The witness 'need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted.'").

Many of the business records at issue in this case belonged to Crown Point and were seized as part of the investigation.  A qualified witness need not be employed by, or related to, the entity to whom the records belong, however; a federal agent or an independent witness may be a qualified witness for records seized from a company.  See Franco, 874 F.2d at 1139-40 (concluding narcotics agent was qualified to testify about record-keeping practices of a money exchange for purposes of Rule 803(6)); United States v. Hathaway, 798 F.2d 902, 905-07 (6th Cir. 1986) ("There is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted. . . . [A]ll that is required is that the witness be familiar with the record keeping system.").

### 3. Circumstances of Preparation

The government need not establish precisely when or by whom the document was prepared; all the rule requires is that the document be made "at or near the time" of the act or event it purports to record. See United States v. Huber, 772 F.2d 585, 591 (9th Cir. 1985); United States v. Basey, 613 F.2d 198, 201 n.1 (9th Cir. 1979). "There is no requirement that the government establish when and by whom the documents were prepared." See Ray, 930 F.2d at 1370; Huber, 772 F.2d at 591 ("[T]here is no requirement that the government show precisely when the [record] was compiled").

Rule 803(6) does not require that the business rely on the document in a specific way; the rule merely requires that the record be "kept in the course of regularly conducted business activity." See United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988).

### 4. Authentication by Declaration

Certified domestic records of regularly conducted activity are self-authenticating when accompanied by a written declaration establishing that (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity. Fed. R. Evid. 902(11).

Custodian of records declarations may be utilized by the Court to provide a foundation for the admission in evidence of business records without creating any confrontation issue under Crawford v. Washington, 541 U.S. 36 (2004). See United States v. Hagege, 437 F.3d 943, 957 (9th Cir. 2006); United States v. Cervantes-Flores, 421 F.3d 825, 832-32 (9th Cir. 2005).

5. <u>Duplicates</u>

A duplicate is admissible to the same extent as an original unless (1) there is a genuine question as to the authenticity of the original, or, (2) in the circumstances, use of the duplicate would be unfair.  Fed. R. Evid. 1003.  Even a photocopy bearing extraneous handwriting not connected to the defendant is admissible.  <u>United States v. Skillman</u>, 922 F.2d 1370, 1375 (9th Cir. 1990).

**D.  Public Records**

Public records and reports are admissible under an exception to the hearsay rule.  Fed. R. Evid. 803(8).  The contents of an official public record that is certified as correct may be proved by a copy, and may be proved by a copy without extrinsic evidence of authentication as long as the copy bears a seal of the United States, any state, or department thereof.  Fed. R. Evid. 1005; 902(1).

**E.  Flight as Circumstantial Evidence of Guilt**

In addition to presenting evidence of defendant's flight to Mexico to prove his failure to appear offense, the government will also present it as evidence of his consciousness of guilt on the conspiracy and mail fraud counts.  Although the Ninth Circuit Jury Instructions Committee "generally recommends" against giving a specific inference instruction concerning flight, Ninth Circuit Model Criminal Jury Instructions, No. 4.18 (2010 ed.), the Ninth Circuit has approved of flight instructions where sufficient facts support "a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged."  <u>United States v. Silverman</u>, 861 F.2d 571, 581 (9th Cir. 1988).  Here, the government is not seeking a specific flight instruction but rather will argue to the jury that under the general circumstantial evidence instruction, the

14

jury may infer defendant's guilt from the fact of his flight.  Under Ninth Circuit case law, the jury may make the following inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  United States v. Dixon, 201 F.3d 1223, 1232 (9th Cir. 2000).

Here, more than sufficient facts support the requisite inferential chain.  The evidence at trial will show that defendant was arraigned in September 2012 on an information charging him with mail fraud and shortly thereafter absconded to Mexico, where he stayed for seven years until his arrest in 2019.  Any reasonable juror would conclude that such conduct constitutes flight.  It is uncontroverted that defendant knew he was "suspected . . . of [the] particular crime[s]" at issue when he fled.  Id. (listing such knowledge as one factor indicating consciousness of guilt).  Prior to fleeing, defendant had been arraigned on an information charging him with one of the instant offenses and had signed a plea agreement in which he agreed to plead guilty to that charge.  See United States v. Hernandez-Miranda, 601 F.2d 1104, 1107 (9th Cir. 1979) (upholding flight instruction where defendant had been arraigned and had pleaded guilty prior to fleeing and, therefore, knew about the charges against him).  Moreover, defendant's flight was close in time to the accusation of the offense; defendant fled to Mexico shortly after he was arraigned and entered into a plea agreement.  Id.  Such facts "support the inference from flight to a consciousness of guilt of the specific crime charged."  Dixon, 201 F.3d at 1232.

15

**F.   Recordings and the Rule of Completeness**

The government will introduce at trial excerpts from two recordings: (1) an audio recording of a seminar that defendant gave to prospective Crown Point customers on or about November 2, 2010; and (2) a video recording of an interview that defendant had with law enforcement on or about June 19, 2012.  The recording of the seminar is nearly two hours in length, and the interview nearly one hour.

In the interest of avoiding "undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403, the government plans only to play the excerpted portions of each recording that are relevant to the trial.

Along with the playing of the recording excerpts, the government intends to show the transcript of each excerpt during its presentation of the evidence.  "When tapes are in English, they normally constitute the actual evidence and transcripts are used only as aids to understanding the tapes; the jury is instructed that if the tape and transcript vary, the tape is controlling." United States v. Franco, 136 F.3d 622, 626 (9th Cir. 1998) (citing United States v. Turner, 528 F.2d 143, 167-68 (9th Cir. 1975)).  Here, the government has provided the transcripts to defense counsel, and defense counsel has not indicated any objections to the transcripts' accuracy.  Moreover, the jury will be instructed in accordance with Ninth Circuit Model Criminal Jury Instruction 2.7 that the recording is the evidence, not the transcript, and that what the jury hears is controlling over the transcript.

Since both recordings are of defendant's statements, they are not hearsay when offered by the government.  Fed. R. Evid. 801(d)(2).  Although "an adverse party may require the introduction, at that

16

time, of any other part" or a recording, that requirement only applies when the remainder of the recording "in fairness ought to be considered at the same time." Fed. R. Evid. 106. In other words, "the Rule does not . . . require the introduction of any unedited writing or statement merely because an adverse party has introduced an edited version," United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014); see also United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) ("'[I]t is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them[.]'" (quoting Mueller & Kirkpatrick Federal Evidence § 44 (1994)).

The government provided defense counsel the full recordings and accompanying transcripts as well as given notice as to the excerpts from the recordings that it intends to present at trial, and defendant had no objection to the excerpts selected by the government, nor has he indicated that the introduction of additional excerpts is necessary under Rule 106. Because any remaining portions are irrelevant, see Vallejos, 742 F.3d at 905 (deeming as inadmissible under Rule 106 excerpts that merely "show the jury the flavor of the interview," "humanize [a defendant]," or "prove his character"), defendant cannot invoke the rule of completeness to compel publishing the entire recording to the jury, see id. ("[I]f the complete statement does not serve to correct a misleading impression in the edited statement that is created by taking something out of context, the Rule of Completeness will not be applied to admit the full statement." (cleaned up)).

### G. Past Recorded Recollection Under Rule 803(5)

Given the length of time that has passed since the underlying events of this case, there may be points at trial where the government asks that a witness read into the record certain contemporaneous handwritten notes taken by a witness.  Such evidence is admissible under Federal Rule of Evidence 803(5) as past recorded recollection if: "1) the witness once had knowledge about the matters in the document, 2) the witness now has insufficient recollection to testify fully and accurately, and 3) the record was made at a time when the matter was fresh in the witness'[s] memory and reflected the witness'[s] knowledge correctly."  United States v. Patterson, 678 F.2d 774, 778 (9th Cir. 1982).  Here, the government anticipates at least one witness's testimony will establish that she regularly kept a personal notebook and that she took the notes at issue "at or near the time of the event[s]" recorded therein.  Id. at 779; see, e.g., United States v. Brown, 800 F. App'x 455, 463 (9th Cir. 2020), cert. denied, 141 S. Ct. 1078 (2021) (affirming the district court's admission of a victim's statement where she had signed the document and affirmed its accuracy in testimony).  Therefore, her notes may be read into evidence as past recorded recollection.

### H. Cross-Examination of Defendant

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  The scope of defendant's waiver is coextensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); Black, 767 F.2d at 1341 ("What the defendant actually discusses on direct does not determine the extent

18

of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.").

Rule 404(b) does not proscribe using evidence of other acts to impeach a defendant during cross-examination.  United States v. Gay, 967 F.2d 322 (9th Cir. 1992).  The government has also given defendant notice that, should he testify, he will be impeached with statements that he made in the plea agreement that he signed on August 28, 2012, including the factual basis section.  (Dkt. 5.) Those statements are not hearsay under Rule 801(d)(2)(D).  See United States v. Harris, 914 F.2d 927, 932 (7th Cir. 1990).  Although Federal Rule of Evidence 410 generally makes statements made during plea negotiations inadmissible against a defendant at trial, defendant unambiguously waived his Rule 410 rights in the plea agreement in the event of a breach.[2]  That waiver should be enforced here, where the Court has declared that defendant breached the plea agreement.  (Dkt. 205.)  See, e.g., United States v. Quiroga, 554 F.3d 1150, 1153-57 (8th Cir. 2009) (enforcing plea agreement's Rule 410 waiver that by its terms applied if the defendant breached the plea agreement, when the defendant breached the agreement by

---

[2] Specifically, defendant agreed that, in the event of a breach, he "will not assert, and hereby waives and gives up, any claim under . . . Rule 410 of the Federal Rules of Evidence, Rule ll(f) of the Federal Rules of Criminal Procedure . . . that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible."  (Dkt. 5 at 19.)  The plea agreement defines "Plea Information" to "mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in th[e] agreement" and "Cooperation Information" to "mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement." (Plea Agreement ¶ 4 (emphasis added).)

withdrawing his guilty plea); United States v. Jim, 786 F.3d 802, 809 (10th Cir. 2015) (same).  The Supreme Court has held, at least with respect to impeachment and rebuttal evidence against a defendant, that "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable."  United States v. Mezzanatto, 513 U.S. 196, 210 (1995).  Thus, defendant's Rule 410 waiver is valid and enforceable, and he may be impeached with the statements that he made in the factual basis of the plea agreement.

## I.   Cross-Examination of General Witnesses

Defendant has not disclosed any potential defense witnesses, so the government is not currently in a position to assess their credibility.  Some general principles nonetheless apply.

Under Federal Rule of Evidence 609, the credibility of a witness may be supported or attacked by evidence in the form of: (1) conviction for crimes involving dishonesty or false statements, provided that the conviction was sustained or the defendant was released from prison on the conviction within the past ten years; (2) prior felony convictions, provided that the conviction was sustained or the defendant was released from prison on the conviction within the past ten years; and (3) opinion or reputation testimony provided that the testimony refers only to the witness's character for truthfulness or untruthfulness.  Fed. R. Evid. 609.  Evidence of truthfulness may be admitted, however, only if the witness's character for truthfulness has been attacked.  Fed. R. Evid. 608(a). The government may inquire, on cross-examination, into a witness's specific instances of conduct, but only if that conduct concerns a

character for truthfulness or untruthfulness.  Such conduct, however, may not be proved by extrinsic evidence.  Fed. R. Evid. 608(b).

**J.    Grand Jury Testimony**

Under Federal Rule of Evidence 801(d)(1)(A), a statement is not hearsay if "[t]he declarant testifies and is subject to cross-examination about a prior statement, and the statement is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition."  Fed. R. Evid. 801(d)(1)(A).  Certain witnesses may previously have testified at grand jury.  In the event that their trial testimony is inconsistent with their prior grand jury testimony, their grand jury testimony may be admissible.

**K.    Character Evidence**

The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to confuse the issues and prejudice the jury.  <u>See</u> <u>Michelson v. United States</u>, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  <u>Id.</u>

In addition, the form of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods through which character evidence may be introduced.  It specifically states that where evidence of a character trait is admissible, proof may be made through testimony as to reputation or opinion.  A defendant may not introduce specific instances of his good conduct through the testimony of others.  <u>See</u> <u>Michelson</u>, 335 U.S. at 477.

On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a

defendant's past conduct relevant to the character trait at issue. See Fed. R. Evid. 405(a). In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. See Michelson, 335 U.S. at 481. The only prerequisite is that there must be a good-faith basis that the incidents inquired about are relevant to the character trait at issue. See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

**L.    Lay Witness Testimony**

Under Federal Rule of Evidence 701, a lay witness may offer opinions without being qualified as an expert so long as those opinions are (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Here, Mr. Bouchard's testimony as described in Section VI.B is not expert opinion because it is based on his own review of Crown Point's bank account records, is helpful to determining the scope of the Crown Point scheme, and is not based on specialized knowledge within the scope of Rule 702.

The government also plans to offer testimony from Robert Ferguson, a Loan Administration Manager at Wells Fargo Bank. Mr. Ferguson will be testifying as a qualified records custodian and based on his personal experience working at Wells Fargo. The government anticipates that Mr. Ferguson's testimony will include: (1) testimony that Wells Fargo was, at the time of the alleged offenses, a financial institution, FDIC insured, and in the mortgage lending business; (2) an overview of mortgage loans, loan

modification, and the foreclosure process; (3) details of George and Connie Tavera's mortgage loan with Wells Fargo and eventual foreclosure of their house: (4) the fact that certain documents mailed to Wells Fargo relating to those accounts had no effect in eliminating the mortgage balance on the loans or preventing foreclosure; (5) that Mr. Ferguson is familiar with similar documents having been mailed to Wells Fargo in connection with other loan files, and that in no instance did such documents have any effect; (6) the effect of adding additional parties to title in delaying the foreclosure/eviction process ("title clouding"); and (7) the effect that the filing of bankruptcy has on the foreclosure/eviction process.  Mr. Ferguson's anticipated testimony does not constitute expert opinion under Federal Rule of Criminal Procedure 16(a)(1)(G) or Federal Rules of Evidence 702 and 703 because it is "'common enough and require such a limited amount of expertise' to 'be deemed lay witness opinion.'"  United States v. Ataba, 805 F. App'x 491, 493 (9th Cir. 2020) (quoting United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997)).

Although Mr. Ferguson's and Mr. Bouchard's anticipated testimony do not constitute expert opinion, in an abundance of caution and to assist him in trial preparation, the government nonetheless provided notice to defendant of both witness's testimony, including their qualifications and the contents of their anticipated testimony as described above.  To date, defense counsel has not indicated any objection to the witnesses themselves or the contents of their testimony, other than the relevance objection to the summary chart described above.

**VII. RECIPROCAL DISCOVERY**

Rule 16 of the Federal Rules of Criminal Procedure creates reciprocal discovery obligations on the part of the defendant to produce three categories of materials she intends to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16 imposes on the defendant a continuing duty to disclose these categories of materials. Fed. R. Crim. P. 6(b)(1)(A), (b)(1)(C), and (c). Defendant's disclosure obligations are not limited to evidence that he may intend to use or elicit during a defense case-in-chief, but include any affirmative evidence that the defense intends to admit during the government's case-in-chief. In those circumstances where a party fails to produce discovery as required by Rule 16, the Rule empowers the district court to "prohibit the party from introducing evidence not disclosed," or "enter such other order as it deems just under the circumstances."

The Ninth Circuit has held that where a defendant fails to produce reciprocal discovery or fails to provide timely notice of his intention to call an expert witness, it is well within the district court's discretion to exclude such defense evidence, especially where the defense disclosure was made after the start of trial. See United States v. Aceves-Rosales, 832 F.2d 1155, 1156-57 (9th Cir. 1987); United States v. Scholl, 166 F.3d 964, 972 (9th Cir. 1999); United States v. Nash, 115 F.3d 1431, 1439-40 (9th Cir. 1997). The Ninth Circuit has specifically held that exclusion of the evidence is a proper sanction for withholding evidence from the government as a "strategic decision". Scholl, 166 F.3d at 972 (holding that the court did not abuse its discretion in excluding evidence that the

defense withheld as a "strategic decision" until the government was unable to fully investigate).

As of the filing of this brief, the government has received no reciprocal discovery.